IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BUTTE DIVISION

_____

| | |
|---|---|
| KERRY CORNELIUS STANFIELD, | Cause No. CV 12-45-BU-DLC-CSO |
| Petitioner, | |
| vs. | FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE |
| WARDEN FRINK; ATTORNEY GENERAL OF THE STATE OF MONTANA, | |
| Respondents. | |

_____

After submitting a "notice" that he intended to file a federal habeas petition, Petitioner Kerry Stanfield filed a petition on August 10, 2012, seeking a writ of habeas corpus under 28 U.S.C. § 2254. Stanfield is a state prisoner proceeding pro se.

On September 26, 2012, the State filed various documents from the state court record. On October 23 and November 6, 2012, Stanfield submitted additional exhibits.

**I. Preliminary Screening**

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts requires courts to examine the petition before ordering the respondent to file an answer or any other pleading. The petition must be summarily dismissed "[i]f it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." *Id.*

A petitioner "who is able to state facts showing a real possibility of constitutional error should survive Rule 4 review." *Calderon v. United States Dist. Court,* 98 F.3d 1102, 1109 (9th Cir. 1996) ("*Nicolaus*") (Schroeder, C.J., concurring) (referring to Rules Governing § 2254 Cases). Consideration under Rule 4 "may properly encompass any exhibits attached to the petition, including but not limited to transcripts, sentencing records, and copies of state court opinions. The judge may order any of these items for [her] consideration if they are not yet included with the petition." Advisory Committee Note (1976), Rule 4, Rules Governing § 2254 Cases. "[I]t is the duty of the court to screen out frivolous applications and eliminate the burden that would be placed on the respondent by ordering an unnecessary answer." *Id.*; *see also* 28 U.S.C. § 2243.

## II. Background

The events underlying this case came to the attention of law enforcement on April 18, 2007, when four minors, intending to confront Stanfield about his sexual

2

activity with one of their friends, set his unoccupied trailer ablaze. Stanfield was charged in Montana's Third Judicial District, Powell County, with three felony counts of sexual assault, violations of Mont. Code Ann. § 45-5-502(1) (2005), and two misdemeanor counts of endangering the welfare of a child, violations of Mont. Code Ann. § 45-5-622. Third Am. Information (doc. 9-19) at 1-3. The State alleged that Stanfield molested three minors and offered alcohol and cigarettes to minors. One of the girls was less than fourteen years old at the time of the alleged offenses and therefore legally incapable of consent. *Id.* § -502(5)(b).

Stanfield reached an agreement with the State and pled no-contest to two of the felony counts. A presentence report was prepared. Trial Court Docket (doc. 9-1) at 4 Entries 64, 67, 68. When the parties realized that Montana law prohibits no-contest pleas to sexual offenses, however, Stanfield withdrew his no-contest plea. *Id.* Entry 72; Sentencing Tr. (doc. 9-25) at 15:16-24; Mont. Code Ann. § 46-12-204(4).

Jury trial commenced on September 8, 2008, and concluded on September 10, 2008. Trial Tr. (docs. 9-22, 9-23) at 1:3, 244:1, 410:19. Stanfield was convicted on Count 2, the felony charge involving the girl under fourteen. He was acquitted on all other charges. Trial Tr. at 477:11-478:4.

A sentencing hearing was held on September 30, 2008. Although the presentence report reflected Stanfield's no-contest plea rather than the jury's verdict,

*see, e.g.*, Presentence Report (doc. 9-21) at 1, 2 ("Circumstances of the Offense"), the parties agreed to proceed on the report as prepared. Stanfield was sentenced to serve forty years in prison, with ten years suspended. Provided that he completes treatment requirements, he will be eligible for parole after he has served fifteen years. Sentencing Tr. at 43:7-21.

Stanfield appealed. Appellate counsel filed a motion to withdraw and an *Anders* brief. Mont. Code Ann. § 46-8-103(2) (2003) (codifying *Anders v. California*, 386 U.S. 738, 744 (1967)). The brief addressed, among other things, the trial court's denial of Stanfield's motions to suppress and to dismiss for violation of his right to speedy trial. *Anders* Br. (doc. 9-26) at 25-29. Stanfield also addressed those matters in his own submission. Resp. to *Anders* Br. at 3-5, *State v. Stanfield*, No. DA 08-0589 (Mont. June 22, 2009), *available at* supremecourtdocket.mt.gov (accessed Jan. 17, 2013). The Montana Supreme Court "independently examined the record" and "conclude[d] an appeal . . . would be wholly frivolous." Order at 1, *Stanfield*, No. DA 08-0589. On July 1, 2009, it granted counsel's motion to withdraw and dismissed the appeal. *Id.*

Stanfield's conviction became final ninety days later, on September 29, 2009. *Gonzalez v. Thaler*, __ U.S. __, 132 S. Ct. 641, 653-54 (2012); *Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir. 1999).

4

On October 1, 2010, Stanfield filed a petition for postconviction relief in the trial court. Trial Court Docket at 5 Entry 116. On February 1, 2011, and again on March 8, 2011, the trial court ruled the petition was untimely by two days. Orders (docs. 9-35, 9-38). Stanfield did not appeal.

Stanfield filed a notice of intent to file a federal petition on July 9, 2012, and an amended petition on August 10, 2012.

### III. Stanfield's Claims

Stanfield contends, first, that his sentence was based in part on charges of which he was acquitted at trial. Am. Pet. (doc. 3-1) at 3 ¶ 15A. Second, he alleges the trial judge was related to one of the jurors. Third, he claims the same juror was also the step-grandmother of the girl Stanfield was convicted of assaulting. *Id.* at 4-5 ¶¶ 15B-C. Fourth, he asserts that his right to a speedy trial was violated. *Id.* at 6 ¶ 15D. Finally, he contends that his right to a fair trial was marred by prosecutorial misconduct when a redacted audio tape of his statement was played for the jury at trial. *Id.* at 8; Br. in Supp. (doc. 4) at 5.

### IV. Analysis

Stanfield's claims are time-barred. 28 U.S.C. § 2244(d)(1)(A); *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005) (holding that § 2244(d)(2) does not toll federal time to file where state court dismisses state filing as untimely). His second,

third, and fifth claims are procedurally barred as well because he did not present them to the Montana Supreme Court, and it is not possible to do so now. Mont. Code Ann. §§ 46-21-102, -105(1)(b), -203. It is clear, however, that his claims lack merit. Accordingly, it is more efficient to address the merits than the procedural issues of equitable tolling or cause and prejudice to excuse procedural default. *See, e.g.*, 28 U.S.C. § 2254(b)(2); *Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997) (making detailed analysis of constitutional issue despite outstanding question as to procedural bar); *Gutierrez v. Griggs*, 695 F.2d 1195, 1198 (9th Cir. 1983).

### A. Claim 1: Presentence Report

Stanfield correctly points out that the presentence report referred to charges of which the jury acquitted him. *E.g.*, Presentence Report at 2 ("Circumstances of the Offense" para. 1). But the parties and the trial judge all knew the report's inaccuracies and compensated for them at sentencing. *See, e.g.*, Sentencing Tr. at 6:23-8:3, 16:14-24, 48:9-11, 49:14-50:14. This claim should be denied.

### B. Claims 2 and 3: Juror Newman

Stanfield alleges that one of the seated trial jurors was not only closely related to the judge but was also the step-grandmother of the girl Stanfield was convicted of molesting. As support for this claim, Stanfield states, "the fact that the judge's last name, in my trial, is 'Newman' which is the same last name as the illegally impaneled

6

jury member . . . who was proven in court to be [the girl's] step-grandmother is too coincidental to be overlooked by any rational human being." Br. in Supp. at 6.

During voir dire, the judge read aloud to counsel the names of the jurors passed for cause. Moving down the list, he read, "Ms. Newman" and then added, "[B]y the way, she's not a relative of the Court if you're curious." Trial Tr. at 51:15-16. In addition, while the lawyers were inquiring about any prejudicial effect from pretrial publicity, Ms. Newman said she "just heard, just something very slight as far as a trailer burning down and something having to do with teenagers." Stanfield's counsel said, "That's all you know about it at this point?" Ms. Newman responded, "That's all I know. . . . That's all I really heard." *Id.* at 26:3-17. When the lawyers asked whether anyone knew Stanfield or whether anyone "had a situation where a family [member] or friend was sexually assaulted at all," Ms. Newman did not respond. *E.g.*, *id.* at 14:11-12, 35:1-3.

The trial and sentencing transcripts do not remotely suggest it was "proven in court" that Ms. Newman was the step-grandmother of the victim, and no other hearing was held after jury selection, not even in postconviction. Trial Court Docket at 5-6 Entries 103-130 (showing minute entries for last day of trial on September 10, 2008, sentencing on September 30, 2008, and no others). In fact, Stanfield did not even make this claim until he filed his amended federal petition in August 2012. *See*

7

Postconviction Pet. (doc. 9-27); Postconviction Aff. (doc. 9-28); Postconviction Br. (doc. 9-29); Supp. Br. (doc. 9-32); Second Supp. Br. (doc. 9-34); Resp. to Order (doc. 9-36); Counter-Reply to Order (doc. 9-39); *see also* Resp. to *Anders* Br. at 1-5, *Stanfield*, No. DA 08-0589. This claim should be denied.

**C. Claim 4: Speedy Trial**

Stanfield alleges that his right to a speedy trial was violated. Five hundred eight days passed between Stanfield's arrest on April 19, 2007, and the commencement of trial on September 8, 2008.

Stanfield filed a motion to dismiss for speedy trial violation on March 31, 2008. Trial Court Docket at 3 Entry 44. At that time, trial was set for May 12, 2008, *see* Order Denying Mot. (doc. 9-20) at 4, which was 390 days after Stanfield's arrest. The case involved an evaluation of Stanfield's fitness to proceed, requested by the defense and completed on February 4, 2008, *see* Trial Court Docket at 2 Entries 24, 26, Presentence Report Scolatti Eval. at 1; analysis of DNA evidence, completed in late December 2007, Order Denying Mot. at 6; and pretrial motions requiring evidentiary hearing, such as the motion to suppress, *id.* at 7. While there is no evidence to show when the DNA evidence was submitted for analysis or why it may have taken as long as seven and a half months, that length of time is not inordinately long. More importantly, the DNA analysis proceeded contemporaneously with delay attributable

8

to the defendant. *See Vermont v. Brillon*, __ U.S. __, 129 S. Ct. 1283, 1287 (2009) ("delays sought by counsel are ordinarily attributable to the defendants they represent."). Defense counsel, after all, could not litigate pretrial motions until he knew whether his client was competent to assist him. "[T]he ordinary procedures for criminal prosecution are designed to move at a deliberate pace." *United States v. Ewell*, 383 U.S. 116, 120 (1966), *quoted in Barker v. Wingo*, 407 U.S. 514, 521 n.15 (1972). There is no indication that the 390-day delay was extraordinary, much less exploitive. The trial court's consideration of the issue, Order Denying Mot. at 3-10, demonstrates that no speedy trial violation occurred up to May 12, 2008.

Trial, however, did not commence as scheduled on May 12, 2008. The additional delay was due to Stanfield's no-contest plea, which, as the parties subsequently discovered, was prohibited by state law. Trial Court Docket (doc. 9-1) at 4 Entries 64, 67, 68; Sentencing Tr. (doc. 9-25) at 15:16-24; Mont. Code Ann. § 46-12-204(4). Ideally, this fact would have been known before Stanfield entered his plea, and trial would have proceed on May 12. But the speedy trial analysis takes prejudice into account as well. Stanfield could not have suffered undue anxiety from the delay between the filing of the plea agreement on May 2, 2008, and the withdrawal of his plea on July 30, 2008, because he did not know during that time that he was facing trial. *See Barker*, 407 U.S. at 532-33. Further, there is no reason to be concerned that

9

Stanfield's defense was compromised by loss of evidence; his conviction on Count 2 depended on testimony asserting a years-long habitual practice, not an isolated incident in which detail was crucial. Finally, a five-week period between the withdrawal of Stanfield's no-contest plea and trial was a reasonable period of time to allow the relocation and subpoena of witnesses, preparation, filing, and consideration of motions in limine, and further attempts to reach an agreement.

The circumstances here simply do not support an inference that the State or the trial court violated Stanfield's right to a speedy trial. Nor was Stanfield prejudiced by delay of his trial from May 2, 2008, to September 9, 2008. This claim should be denied.

**D. Claim 5: Redacted Audio Tape**

As authorities responded to Stanfield's burning trailer, he was located at a friend's house. He was taken to the hospital with what appeared to be acute alcohol poisoning. *Cf.* Trial Tr. at 331:10-332:24. The next day, he was interviewed at the hospital. The interview was tape-recorded.

Stanfield contends the State redacted the tape to omit sounds that would have proven he requested counsel and was coerced to make statements by administration of an intravenous drug. It appears more likely that the State redacted the tape for exactly the reason it stated: to present the jury with a tape sanitized of "issues with

10

other crimes and non-admissible portions." Am. State's List of Exhibits (doc. 13-1) at 1 (stating date of interview as August 20, 2007, rather than April 20, 2007); Trial Tr. at 240:15-242:24; *see also id.* at 244:8-246:24 (referring to separate charges against Stanfield concerning his daughters).[1] Even if redaction also omitted some potentially probative sounds, omission of other-crimes evidence was hardly prosecutorial misconduct.

At any rate, the jury clearly did not place much stock in Stanfield's recorded statements. It acquitted him on four of the five charges presented to it. *See, e.g.*, Trial Tr. at 362:2-5 (Stanfield disagrees with his recorded admission that he gave alcohol to minors); *id.* at 477:23-478:2 (acquitting on both charges of providing alcohol to minors). There is no reason to think Stanfield was prejudiced by the redaction. This claim should be denied.

## V. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it

---

[1] Stanfield filed but lost a motion to suppress his statements as coerced. *E.g.*, Trial Court Docket at 2 Entry 36, 3 Entries 53, 56; Hr'g Tr. (doc. 9-16) at 12:24-13:3 (referring to suppression hearing); *Anders* Br. (doc. 9-26) at 3-6 (summarizing proceedings on motion to suppress). At some times he has asserted he does not remember anything about the interview, and at others he has claimed his IV line and catheter bag were interfered with to torment him and a gun was jammed into his mouth, breaking several teeth. He also testified before the jury about the conditions in which he gave his statement. Trial Tr. at 340:17-341:15, 342:13-20, 348:8-10, 355:21-356:4, 358:22-363:1.

enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2254 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

The documents submitted by the State and Stanfield leave no realistic doubt that Stanfield received a fair trial. The presentence report was incorrect in some respects, because it was prepared following a no-contest plea that was later vacated; but the parties and the sentencing judge were well aware of the correct facts. Stanfield's claims that the trial judge was closely related to one of the jurors, and that the same juror also happened to be the step-grandmother of the only girl Stanfield was convicted of assaulting, is specious. While the 508 days that passed between Stanfield's arrest and his trial is a long time, most of the delay was due to the defendant's needs for an evaluation of his fitness to proceed, presentation of a motion to suppress, and a mutual mistake by the parties about the no-contest plea. Further, Stanfield was convicted on one count involving a years-long course of conduct, not an isolated incident as to which detailed memory was crucial, so there is no reason to

suspect he was prejudiced. Finally, the State "altered" the audiotape of Stanfield's statement so that the jury would not hear about other charges, and the verdict showed the jury did not rely heavily on the tape anyway.

The petition presents no open questions and nothing on which reasonable jurists could disagree. None of Stanfield's claims has substance. A certificate of appealability is not warranted.

Based on the foregoing, the Court enters the following:

**RECOMMENDATION**

1. The Petition (doc. 1) should be DENIED on the merits.

2. The Clerk of Court should be directed to enter by separate document a judgment in favor of Respondents and against Petitioner.

3. A certificate of appealability should be DENIED.

**NOTICE OF RIGHT TO OBJECT
TO FINDINGS & RECOMMENDATION
AND CONSEQUENCES OF FAILURE TO OBJECT**

Pursuant to 28 U.S.C. § 636(b)(1), Stanfield may serve and file written objections to this Findings and Recommendation within fourteen (14) days of the date entered as indicated on the Notice of Electronic Filing. If Stanfield files objections, he must itemize each factual finding to which objection is made and must identify the

evidence in the record he relies on to contradict that finding; and he must itemize each recommendation to which objection is made and must set forth the authority he relies on to contradict that recommendation. Failure to assert a relevant fact or argument in objection to this Findings and Recommendation may preclude Stanfield from relying on that fact or argument at a later stage of the proceeding. A district judge will make a de novo determination of those portions of the Findings and Recommendation to which objection is made. The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendation. Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

<u>Stanfield must immediately notify the Court of any change in his mailing address by filing a "Notice of Change of Address."</u> Failure to do so may result in dismissal of his case without notice to him.

DATED this 22nd day of January, 2013.

/s/ <i>Carolyn S. Ostby</i><br>United States Magistrate Judge