
IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| KERRY CORNELIUS STANFIELD,<br><br>Petitioner,<br><br>vs.<br><br>WARDEN FRINK; ATTORNEY GENERAL OF THE STATE OF MONTANA,<br><br>Respondents. | CV 12-45-BU-DLC<br><br><br>ORDER |

Before the Court are the Findings and Recommendation of United States Magistrate Judge Carolyn Ostby recommending that the Petition in this case be denied on the merits. Plaintiff Kerry Cornelius Stanfield has filed objections and is entitled to de novo review of the specified findings and recommendations to which he objects. 28 U.S.C. § 636(b)(1). All other findings and recommendations are reviewed for clear error.

Stanfield filed a petition seeking a writ of habeas corpus under 28 U.S.C. § 2254 on August 10, 2012. Judge Ostby reviewed the petition under Rule 4 of the

Rules Governing Section 2254 Cases in the United States Court. She found that Stanfield's claims are time-barred and procedurally barred, but determined that it was more efficient to address the merits and that each of the claims lack merit. Having reviewed Judge Ostby's findings and Stanfield's objections, the Court agrees with Judge Ostby that four of Stanfield's claims clearly lack merit. But Stanfield has raised enough questions to warrant further consideration of his claim that one of the jurors at his trial was biased due to an alleged familial relationship with the victim of the offense of conviction. On this single issue, the case will be remanded to Judge Ostby for further proceedings.

I. Analysis

As a preliminary matter, the Court rejects Stanfield's assertion that his petition was recommended for denial because he is proceeding pro se and does not understand the law. Judge Ostby appropriately construed his petition liberally, as this Court has also done, and she recommended denial based on the factual allegations and the record, not any lack of legal analysis.

A. **Presentence Report (Claim 1)**

Stanfield insists that his sentence was improperly predicated on a presentence report that was inaccurate and that referenced a psychosexual evaluation that Stanfield alleges was obtained without his consent.

2

The presentence report was prepared after Stanfield pled no-contest to two felony counts. The parties then realized that Montana law prohibits no-contest pleas to sexual offenses, and Stanfield withdrew his no-contest plea. Stanfield was convicted by a jury on Count 2, a felony charge under Mont. Code Ann. § 45-5-502(5)(b) involving a victim under the age of 14. He was acquitted on all other charges. When he was sentenced, the Court considered the presentence report that had been prepared before Stanfield withdrew his plea.

As Judge Ostby found, the parties and trial judge knew that Stanfield had been acquitted of the other charges, and Stanfield's sentence was therefore not based on incorrect information. Additionally, the presentence report's references to a psychosexual evaluation were appropriate under Mont. Code Ann. § 46-18-111, which states that a presentence investigation must include a psychosexual evaluation for any defendant convicted under § 45-5-502. At the time the investigation was conducted, Stanfield had pled no-contest to a charge under § 45-5-502. At the time the sentencing was held, Stanfield had been convicted of a charge under § 45-5-502(5)(b). Even if the evaluation was conducted at the same time as Stanfield's competency evaluation, the results of the psychosexual evaluation were properly included in the presentence report and considered at sentencing. There is no suggestion that the psychosexual evaluation was

improperly used at trial. Accordingly, Judge Ostby's findings and recommendation regarding this claim are adopted in full.

## B. Speedy Trial (Claim 4)

As Judge Ostby found, the delay in Stanfield's case was not unreasonable. It was attributable to the need to obtain an evaluation of Stanfield's competency to proceed, to analyze DNA evidence, and to consider pretrial motions, including the defendant's motion to suppress. Additional delay occurred because of the no-contest plea and its ultimate withdrawal when the parties realized Montana law prohibits no-contest pleas to sexual offenses. There is no evidence this delay prejudiced Stanfield's defense in any way, and there is no reason to infer that the State or trial court violated Stanfield's right to a speedy trial or that the State purposefully made the mistake of agreeing to a no-contest plea. Even if all the delay were attributed to the government—and it would not be because defense counsel sought the competency evaluation and filed pretrial motions—the amount of delay was not unreasonable under federal law, which, unlike Montana law, does not presume prejudice after a delay in excess of 275 days. Judge Ostby's findings and recommendation regarding this claim are therefore adopted in full.

## C. Redacted Audio Tape (Claim 5)

The Court also adopts Judge Ostby's findings and recommendation

4

regarding Stanfield's claim that the State violated his due-process rights when it played a redacted audio recording of his statements to police at trial. The State explained that the redactions were made to sanitize the tape of other-crimes evidence. Although Stanfield now claims that he could not hear the recording at trial and that probative evidence was redacted, there is no allegation that his counsel was unable to hear, and his counsel did not object to the State's explanation for the redaction. In any case, even if probative information were redacted, there is no reason to think Stanfield was prejudiced by the redaction as the jury acquitted him on four of the five charges presented to it. This claim is denied.

## D. Juror Newman

In his objections, Stanfield does not reassert his claim that Mary Newman, a juror, was related to the trial judge (Claim 2). Judge Ostby's findings and recommendations as to this claim are adopted in full.

Stanfield does reassert his claim that Ms. Newman was related to the victim of the assault of which he was convicted (Claim 3). The Court notes that Stanfield did not raise this claim until he filed his amended federal petition in August 2012, and, as Judge Ostby found, it is not clear from the record that Ms. Newman is in fact the step-grandmother of the victim. However, Stanfield raises questions that

must be addressed.

Stanfield alleges that Ms. Newman is the step-grandmother of the fourteen-year-old victim because Ms. Newman's husband is the stepfather of the victim's mother. He says the victim "grew up with Ed and Mary Newman as her step-grandparents." (Objections, doc. 17 at 13.) He claims to know this because he is the father of the victim's half-brother, with whom the victim was raised.

After voir dire, Stanfield says that he asked his counsel if it was legal for Ms. Newman to be related to the victim and that his attorney went to Judge Newman with this concern. According to Stanfield, Judge Newman determined there was no problem with Ms. Newman being on the jury. (*Id.* at 15.) None of this is on the record, and the issue was not raised again.

Neither the relationship between Ms. Newman and the victim nor any bias on the part of Ms. Newman are apparent in the record. During voir dire, when a lawyer asked whether anyone had been exposed to publicity concerning the case, Ms. Newman said she "just heard, just something very slight as far as a trailer burning down and something having to do with teenagers." (Trial Tr. at 26:3–17.) She did not respond when the jurors were asked whether anyone "had a situation where a family [member] or friend was sexually assaulted at all." (*Id.* at 14:11–12, 35:1–3.) Nor did Ms. Newman indicate that she knew Stanfield, though the

6

question was asked and other jurors stated they knew him.

Ms. Newman and the other prospective jurors were also asked if they knew two alleged victims, but they were not asked if they knew the victim of the offense of conviction, K.A. Later, after the jury had been seated, a second round of voir dire was conducted with three prospective alternate jurors. This time, the attorneys asked if the prospective alternates knew anyone involved in the trial, including K.A. (*Id.* at 62:3–6.) The questions asked of the prospective alternates do not appear to have been directed at anyone else, and no members of the seated jury volunteered any new information.

The Sixth Amendment guarantees criminal defendants a verdict by impartial, indifferent jurors, and the bias of even a single juror taints a trial. *Dyer v. Calderon*, 161 F.3d 970, 973 (9th Cir. 1998). "The presence of a biased juror cannot be harmless; the error requires a new trial without a showing of actual prejudice." *Fields v. Woodford*, 309 F.3d at 1103 (9th Cir. 2002) (internal quotation marks and citations omitted). On "rare occasions" and in "extraordinary circumstances," "courts may presume bias based on the circumstances." *Id.*; *Green*, 232 F.3d at 676; *Dyer*, 161 F.3d at 982. Bias can be implied from the "potential for substantial emotional involvement, adversely affecting impartiality inherent in certain relationships." *Fields*, 309 F.3d at 1104 (quoting *Tinsely v.*

7

*Borg*, 895 F.2d 520, 527 (9th Cir. 1990) (internal quotation marks and citation omitted)). In *Tinsley*, the Ninth Circuit adopted the test previously articulated by the Fourth Circuit: bias may be implied in "those extreme situations where the relationship between a prospective juror and some aspect of the litigation is such that it is highly unlikely that the average person could remain impartial in his deliberations under the circumstances." 895 F.2d at 527.

The relationship of step-grandmother is not necessarily so close as to be sufficient for the presumption of bias, but it very well could be, depending on the circumstances. Additionally, although Ms. Newman did not indicate she had any family members who had been sexually assaulted, many families do not discuss such issues. Since K.A. had not been named as an alleged victim, there is no reason she should have known during voir dire that one of the alleged victims was, according to Stanfield at least, her step-granddaughter.

There are sufficient questions regarding this claim to remand this case to Judge Ostby for further proceedings.

II. Order

IT IS ORDERED that Judge Ostby's Findings and Recommendation are ADOPTED in part and REJECTED in part as follows:

1. Claims 1, 2, 4, and 5 are DENIED.

8

2. This case is remanded for further proceedings on Claim 3, concerning the potential bias of Juror Newman because of her alleged relationship to the victim, K.A.

Dated this 8th day of April 2013.

*Dana L. Christensen*
Dana L. Christensen, Chief Judge
United States District Court